UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

GREGORY BONAPARTE,

      Plaintiff,

v.                                      CASE NO. 5:12-cv-639-Oc-10PRL

FNU Jimenez, et al.,

      Defendants.

_____

## ORDER

      This case is before the Court on Defendants Jimenez, Hammond, Jarvis, Southeast Regional Director,[1] Pastrana, and Watts' (collectively "Defendants") Motion to Dismiss and Alternatively, Motion for Summary Judgment (Doc. No. 35).[2]  Plaintiff was notified by Order of the Court of his right to respond to Defendants' motion for summary judgment and to file affidavits and other evidence in opposition to the motion (Doc. No. 36).  *See Herron v. Beck*, 693 F.2d 125, 126 (11th Cir. 1982).  Plaintiff has filed a Response in Opposition to the Motion for Summary Judgment (Doc. No. 51), a Statement of Disputed Factual Issues (Doc. No. 51), and a Brief in Support of his Opposition (Doc. No. 52).  For the following reasons, Defendants' Motion for Summary Judgment is granted.

_____

[1]The Court notes that Plaintiff refers to this Defendant as "SERO" (Doc. No. 1 at 3). Defendants state that SERO is an abbreviation for the Southeast Regional Director (Doc. No. 35 at 2 n.4).  According to Defendants, R.E. Holt ("Holt") was the Southeast Regional Director at the time the events in the complaint transpired.  *Id.*  Holt has since retired.  *Id.*

[2]Defendants Bland, Flournoy, and Truman were dismissed from this action on November 18, 2014 (Doc. No. 58).

# I. FACTUAL BACKGROUND[3]

Plaintiff, a federal prisoner proceeding *pro se*, filed this action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (Doc. No. 1). Plaintiff alleges that on May 20, 2011, he complained to Defendant Jimenez, Correction Treatment Specialist (Case Manager), when he was denied the opportunity to attend a Muslim religious service held in the FCC Coleman Low chapel on that same day. *Id.* at 10. According to Defendant Jimenez, Plaintiff had not received prior approval to attend the religious service, nor had he been placed on "call out;" therefore, he was not permitted to attend the service (Doc. No. 35-1, Ex. 6). Plaintiff filed a grievance regarding the matter on May 21, 2011 (Doc. No. 1 at 10). Plaintiff contends that he also complained to Defendant Bland about this issue on May 22, 2011. *Id.*

According to Plaintiff, Defendant Jimenez charged him in incident report number 2166690 with violating Bureau of Prison ("BOP") Code 313 - Lying or Falsifying a Statement. *Id.* Plaintiff states Defendant Jimenez falsely alleged in the incident report that Plaintiff made the false statement that he was scheduled to speak at the Muslim religious service. *Id.* Plaintiff asserts that this incident report was filed "in retaliation against [him] for previously complaining . . . and filing the May 21st grievance form. . . ." *Id.* Contrary to Plaintiff's assertions, Defendant Jimenez attests that incident report number 2166690 was issued by the Unit Disciplinary Committee ("UDC") because Plaintiff told prison staff that he was permitted to attend the religious service even though he had not received prior

---

[3]The statement of facts is derived from the Complaint (Doc. No. 1) and the affidavits provided by Defendants in support of their Motion to Dismiss and Alternatively, Motion for Summary Judgment (Doc. No. 35-1).

permission to attend (Doc. No. 35-1, Ex. 6).

Plaintiff alleges that on May 26, 2011, Defendant Jimenez presided as the chairperson over the disciplinary hearing (Doc. No. 1 at 10).  Plaintiff was found guilty of violating BOP Code 313.  *Id.*  After this determination, Plaintiff filed a grievance against Defendant Jimenez in which he alleged that Defendant Jimenez made a false report against him in retaliation for his May 21, 2011 grievance.  *Id.*  While Plaintiff was typing his grievance, Defendant Jimenez allegedly stated, in an intimidating manner, "you want to file lawsuits and 8 1/2s huh." *Id.* at 10-11.

On May 27, 2011, Defendants Jimenez and Hammond filed incident report number 2168151 against Plaintiff.  *Id.* at 11.  Defendants Jimenez and Hammond also confiscated Plaintiff's radio, headphones, and other items purchased at the commissary.  *Id.*  Plaintiff contends that the incident report was in retaliation for his May 26, 2011 grievance.  *Id.*  However, Defendant Hammond states that on May 27, 2011, he performed a search of Plaintiff's inmate area, and his search revealed altered stamps, a radio with an altered register number, and various items belonging to other inmates(Doc. No. 35-1, Ex. 8).  The items were in violation of BOP Program Statement 5580.08, therefore, Defendant Hammond issued the incident report.  *Id.*  Defendant Hammond stated that at the time of the search, he was unaware of any issues regarding Plaintiff's inability to attend the religious service.  *Id.*

Plaintiff alleges that later that same day, Defendant Jimenez continued his harassment by placing Plaintiff in administrative segregation, which in turn deprived him of his use of personal property and hygiene materials (Doc. No. 1 at 11).  Plaintiff claims that on June 1, 2011, his security classification level was changed from low to medium,

3

which resulted in his transportation to the special housing unit ("SHU") at FCC Coleman Medium. *Id.* Plaintiff was also given a "pending transfer" status which prevented him from continuing with the grievance process again Defendant Jimenez.[4] *Id.*

Defendant Jimenez states in his declaration that as a part of his employment duties, it is his responsibility to rescore any inmate who has received a disciplinary infraction (Doc. No. 35-1, Ex. 6).[5] Plaintiff was rescored after he was found guilty of incident report number 2166690 to a "borderline Low to Medium" inmate. *Id.* Following incident report number 2168151, Plaintiff was placed in the SHU because it was likely that his security level would increase after this infraction. *Id.* However, Defendant Jimenez attests that he did not place Plaintiff in the SHU because it is beyond his authority to do so. *Id.* Defendant Jimenez also states that inmates are permitted to file grievances even when they are placed in administrative detention. *Id.*

Plaintiff alleges that in June 2, 2011, Defendant Jimenez imposed a 90-day stamp restriction on Plaintiff for incident report numbers 2166690 and 2168151. *Id.* at 12. Thereafter, Plaintiff states he was restricted from purchasing sanitary, medical, and legal

---

[4]Plaintiff states that he remained in the SHU for at least one month, and on July 6, 2011, Defendant Jimenez adjusted Plaintiff's security custody so that he had 16+ points and was transferred to FCC Coleman Medium. *Id.* Defendant Jimenez attests that he rescored Plaintiff as is required by BOP policy, and Plaintiff's custody level rose to a "20 point medium" (Doc. No. 35-1, Ex. 6). Defendant Jimenez attests that due to Plaintiff's security point increase and his disrespectful behavior toward staff, he then submitted a transfer request to the Unit Manager. *Id.* The Unit Manager and Warden recommended Plaintiff's transfer to a higher security correctional facility. *Id.*

[5]Brian Ford ("Ford"), Complex Case Manager Coordinator for Coleman Federal Correctional Complex, also attests that each time an inmate receives an incident report, BOP staff is required under Program Statement 5100.08 to rescore an inmate's custody level (Doc. No. 35-1, Ex. 7).

items.  *Id.*  Defendant Jimenez attests that a "90-day stamp restriction" does not exist, and inmates are permitted to purchase stamps, medical items, and hygiene products while in administrative detention as long as such purchases do not exceed $25 (Doc. No. 35-1, Ex. 6).

According to Plaintiff, Defendants Jarvis and Flournoy continued the retaliatory conduct against him by arbitrarily denying his administrative appeals (numbers 643887 and 646253) (Doc. No. 1 at 12).  Defendant Holt then denied regional administrative appeal number 646253 on September 23, 2011.  *Id.* at 13.  Furthermore, Plaintiff alleges that between October 2011 and June 2012, Defendants Pastrana and Watts conspired to continue retaliating against him by denying his Central Office administrative appeal numbers 643861 and 646253.  *Id.*  Plaintiff states that Defendants Pastrana and Watts did not investigate, review, or resolve Plaintiff's complaints regarding the retaliatory and harassing actions that had been taken at FCC Coleman.  *Id.*  Defendants Watts and Truman also conspired to continue the retaliation by denying Plaintiff's request to have incident report number 2168151 expunged.[6]  *Id.*

Plaintiff alleges First Amendment claims of retaliation and conspiracy to retaliate against each Defendant.  Plaintiff also contends that Defendant Jimenez violated his Eighth Amendment rights by placing him in administrative segregation, which in turn deprived him of his use of personal property and hygiene materials, and by imposing excessive and impermissible disciplinary sanctions.

---

[6]Defendant Jimenez attests that Plaintiff's disciplinary report for this incident was later returned for rehearing (Doc. No. 35-1, Ex. 6).  However, for unknown reasons, the violation was not reheard, and the disciplinary violation was expunged from Plaintiff's record.  *Id.*

5

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provide that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1)(A).

The nonmoving party, so long as that party has had an ample opportunity to conduct discovery, must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If, after the movant makes its showing, the nonmoving party brings forth evidence in support of its position on an issue for which it bears the burden of proof at trial that "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

6

### III. DISCUSSION

#### A.      Personal Jurisdiction

Defendants Holt and Watts move to dismiss the instant complaint for lack of personal jurisdiction (Doc. No. 35 at 4-5).  Defendants contend that Plaintiff has not met his burden of alleging sufficient facts to make out a prima facie case of jurisdiction.  *Id.* at 4. Defendants note that they do not reside or work in the State of Florida, therefore, they are not subject to the personal jurisdiction of this Court.  *Id.* at 4-5. Defendant Holt alleges that during the relevant time period, his office was located in Atlanta, Georgia.  *Id.* at 4. Defendant Watts maintains that he works in Washington, D.C.  *Id.*

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted); *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010).  "[T]he mere fact that federal government officials enforce federal laws and policies . . . on a nationwide basis is not sufficient in and of itself to confer personal jurisdiction in a lawsuit which seeks money damages against those same officials in their individual capacities."  *Wag-Aero, Inc. v. United States*, 837 F. Supp. 1479, 1485 (E.D. Wis. 1993), aff'd 35 F.3d 567 (7th Cir. 1994) (citing *Stafford v. Briggs*, 444 U.S. 527, 543-45 (1980)).

Plaintiff's complaint contains no allegations establishing that Defendants Holt and Watts have ties to this district or Florida.  The act of providing inadequate responses to grievances or failing to investigate Plaintiff's claims is not enough to demonstrate personal

jurisdiction. *See Durham v. Hood*, 412 F. App'x 127, 130 (10th Cir. 2011).   The act of mailing a letter to a recipient in the forum state is insufficient to establish the contact with the forum state required to establish personal jurisdiction.   *See Lockard v. Equifax, Inc.*, 163 F.3d 1265-66 (11th Cir. 1998).   Furthermore,  Plaintiff did not address Defendants' lack of personal jurisdiction argument in his responses in opposition to the Motion to Dismiss and Alternatively, Motion for Summary Judgment.   *See* Doc. Nos. 51 & 52.   Therefore, he has not met his burden of presenting a prima facie case of jurisdiction over Defendants Holt and Watts.   Consequently, Defendants Holt and Watts' Motion to Dismiss is granted, and the claims against Defendants Holt and Watts are dismissed without prejudice.   *See Canadian Steel Fabricators, Ltd. v. Garner*, No. 11-20039-CV, 2011 WL 4424431, at *6 (S.D. Fla. Sept. 22, 2011) (granting the defendants' motion to dismiss for lack of personal jurisdiction and dismissing the case without prejudice).

### B.    Qualified Immunity - First Amendment Claims

Defendants Jimenez and Hammond argue that they are entitled to qualified immunity on Plaintiff's First Amendment retaliation and conspiracy to retaliate claims (Doc. No. 35 at 8-9).   "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Pearson v. Callahan,* 555 U.S. 223, 232 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (quotation omitted).   "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law."   *McCullough v. Antolini,* 559 F.3d 1201, 1205 (11th Cir. 2009) (citations

8

omitted) (quotations omitted).  To receive qualified immunity a defendant must first prove he or she was acting within the scope of his or her discretionary authority.  *See Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

Once a defendant shows that he or she was acting within his or her discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate.  *Lumley v. City of Dade City*, 327 F.3d 1186, 1194 (11th Cir. 2003).  The Supreme Court has set forth a two-part test for the qualified immunity analysis.  First, a court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation."  *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).  If Plaintiff's version of the facts set forth the violation of a constitutional right, the next step is to ask whether the right was clearly established at the time of the alleged conduct.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  It is within a court's discretion to decide which prong of the qualified immunity analysis to address first.  *See Pearson*, 555 U.S. at 236.

Based on the allegations in the complaint and the evidence presented, the Court concludes that Defendants were acting in the scope of their discretionary authority when the incidents giving rise to the complaint occurred.  Accordingly, the Court will consider whether Plaintiff has demonstrated a constitutional violation.

"A prisoner may establish a First Amendment retaliation claim by showing that prison officials retaliated against him for exercising his right to free speech."  *Stallworth v. Tyson*, 578 F. App'x 948, 950 (11th Cir. 2014) (citing *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011)).  To prevail on a First Amendment claim, a prisoner must establish that he engaged in constitutionally protected speech, that he suffered adverse action such that the retaliatory conduct would deter a person of ordinary firmness from engaging in such

9

speech, and that there is a causal connection between the retaliatory conduct and the protected speech. *O'Bryant*, 637 F.3d at 1212; *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008)

With regard to the first element, it is well-settled law that one's First Amendment rights are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment. *Stallworth*, 578 F. App'x at 950 (citing *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam); *Douglas*, 535 F.3d at 1321. The second element is an objective standard based on factual inquiry. *Id.* (citing *Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008). Finally, to meet the third element, a prisoner must demonstrate that his protected speech was the motivating factor behind the actions taken by correctional staff. *O'Bryant*, 637 F.3d at 1217 (citations omitted).

 Conclusory allegations of retaliation, without more, are insufficient to state a claim of retaliation. *See Smith v. Fla. Dep't of Corr.*, 375 F. App'x 905, 910-11 (11th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1266 (11th Cir. 2009); *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005)). A prisoner must show more than his personal belief that he is the victim of retaliation. *See Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995); *Garcia v. Fla. Dep't of Corr.*, No. 3:13cv384/MCK/EMT, 2014 WL 4635451, at * 2 (N.D. Fla. Sept. 12, 2014).

Plaintiff has not demonstrated that his protected speech was the motivating factor behind the alleged retaliatory conduct. Plaintiff first alleges that Defendant Jimenez falsely charged him with incident report 2166690 (Doc. No. 2 at 10). Plaintiff attempted to attend a Muslim religious service, however, he was not allowed to attend because he had not received prior approval to attend the religious service. *See* Doc. No. 35-1, Ex. 4, Decl. of

10

Maria Perales ("Perales") (stating Plaintiff had not received prior permission to attend the religious service on May 20, 2011 and noting that "call out" is a list of inmates that have been pre-approved to attend a religious activity); Ex. 5, Decl. of Desiree Gonzalez ("Gonzalez") (averring that Plaintiff told her was a guest speaker for the Muslim religious service and that Perales confirmed Plaintiff was not placed on call out nor was he a guest speaker); Ex. 6, Decl. of Defendant Jimenez (stating that he told Plaintiff he could not attend the religious service if he had not received prior approval and that it is generally known within the inmate population that one needs to receive approval to attend religious activities).

Furthermore, according to Perales, who is the Religious Services Assistant at FCC Coleman Low, because Plaintiff was identified as a member of the Rastafarian faith group, he needed permission to participate in a Muslim religious service (Doc. No. 35-1, Ex. 4). After Plaintiff filed a grievance regarding the matter, incident report 2166690 was issued, which resulted in a disciplinary violation.  Defendant Jimenez attests that he did not issue the incident report, and instead, the UDC issued the incident report due to Plaintiff's false statements to correctional staff that he had received permission to attend the religious service (Doc. No. 35-1, Ex. 6).

Plaintiff states that BOP regulations and policies allow for inmates to attend any religious service without permission or placement on call out (Doc. No. 52, Ex. 1).  Plaintiff cites to BOP regulation 548.10 and the BOP Program Statement to support his contention. However, BOP regulation 548.10(b) provides:

> When considered necessary for the security or good order of the institution, the Warden may limit attendance at or discontinue a religious activity. Opportunities for religious activities are open to the entire inmate population,

without regard to race, color, nationality, or ordinarily, creed. **The Warden, after consulting the institution chaplain, may limit participation in a particular religious activity or practice to the members of that religious group**. Ordinarily, when the nature of the activity or practice . . . indicates a need for such a limitation, only those inmates whose files reflect the pertinent religious preference will be included.

28 C.F.R. § 548.10(b) (2012) (emphasis added); *see also* BOP Program Statement 5360.09(7). Plaintiff's evidence does not dispute Perales' statement that Plaintiff needed prior permission to attend the Muslim religious service.

Additionally, Plaintiff has not provided any evidence to dispute Defendant Jimenez's attestation that he did not file incident report number 2166690. Nor has Plaintiff disputed Defendant Jimenez's attestation that the incident report was filed not because Plaintiff told Perales or Gonzales that he was a speaker at the service but instead because he falsely stated that he had received prior permission to attend the service. *See* Doc. No. 35-1, Ex. 6. Consequently, Plaintiff has not demonstrated a constitutional violation with regard to this claim. *See O'Bryant*, 637 F.3d at 1217; *Smith*, 375 F. App'x at 910-11.

Plaintiff next alleges that after he filed a grievance against Defendant Jimenez for filing incident report 2166690, Defendants Jimenez and Hammond further retaliated against him by filing incident report 2168151. Plaintiff states that several items he purchases at the institutional commissary were confiscated (Doc. No. 52, Ex. 1). Defendant Hammond states that in accordance with his orders as Unit Officer, he is required to search a minimum of five inmate areas per shift (Doc. No. 35-1, Ex. 8). Defendant Hammond further attests that he randomly searched Plaintiff's inmate area on May 27, 2011, found several

unauthorized items, and consequently, he issued an incident report.[7] *Id.* Defendant Jimenez avers that there was sufficient evidence to find that a violation occurred. *Id.* at Ex 6. Plaintiff has not presented any evidence demonstrating that incident report 2168151 was filed due to a retaliatory motive and not based on Plaintiff's violations of BOP policy. *See O'Bryant*, 637 F.3d at 1217*; Smith*, 375 F. App'x at 910-11; *Garcia*, 2014 WL 4635451, at *2. Therefore, no constitutional violation exists with regard to this claim.

Plaintiff also contends that Defendant Jimenez further retaliated against him by placing him in administrative confinement and raising his security level, which led to his transfer to a higher security prison (Doc. No. 1 at 10-12); *see also* Doc. No. 52, Ex. 1, Decl. of Pl. (claiming that his custody increase was a pretext). Defendant Jimenez states that pursuant to BOP policy, an inmate's security level must be rescored after an inmate has violated a prohibited act (Doc. No. 35-1, Ex. 6); *see also* Doc. No. 35-1, Ex. 7, Decl. of Ford (averring that each time an inmate receives an incident report, BOP staff is required to rescore that inmate's custody level pursuant to BOP Program Statement 5100.08). Defendant Jimenez rescored Plaintiff according to BOP policy. *Id.* Defendant Jimenez also attests that he has no authority to place an inmate into the SHU, but notes that when inmates are rescored and their custody level changes, they are placed in administrative confinement. *Id.*

Finally, Defendant Jimenez states that because of Plaintiff's increased security level and in part because of his behavior toward staff, he recommended that Plaintiff be

---

[7]As noted previously, Defendant Hammond attests that Plaintiff had altered stamps, items with altered register numbers, and items belonging to other inmates. *Id.* The incident report was issued for altering items purchased at the commissary. *Id.*

transferred to a higher security facility. *Id.* The Unit Manager and Warden were required to approve such a transfer. *Id.* Moreover, according to Ford, the Designation and Sentence Computation Center ("DSCC") is responsible for reviewing recommended transfers and ultimately approving transfers of inmates (Doc. No. 35-1, Ex. 7).

Again, Plaintiff's allegations that Defendant Jimenez's actions amounted to retaliation are unsupported. *See O'Bryant*, 637 F.3d at 1217; *Smith*, 375 F. App's at 910-11. Plaintiff has not shown that Defendant Jimenez's actions were based on a retaliatory motive instead of legitimate actions taken pursuant to BOP policy. After Plaintiff received the second incident report, his security level changed. Therefore, Plaintiff's transfer to a medium security facility was required pursuant to BOP policy. Plaintiff has not shown that a constitutional violation exists with regard to these claims.[8] The Court also notes that prisoners have no constitutionally protected liberty interest in being housed in a particular facility. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)).

Next Plaintiff argues that Defendant Jimenez impermissibly retaliated against him by imposing a 90-day stamp restriction, prohibiting him from purchasing medical, sanitary, and legal items, and by preventing him from participating in the grievance process while he was housed in the SHU (Doc. No. 1 at 12-13). Defendant Jimenez attests that there is no 90-day stamp restriction policy at the BOP (Doc. No. 35-1, Ex. 6). Furthermore,

---

[8]The Court also notes that incident report 2168151 and the resulting disciplinary violation have not been expunged. Therefore, it is arguable whether Plaintiff can state a retaliation claim with regard to this issue. *See O'Bryant*, 637 F. at 1215 (stating that an inmate "cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate is found guilty of the actual behavior underlying that charge after being afforded adequate due process.")

14

Defendant Jimenez states that while in administrative detention, inmates are restricted to purchases no larger than $25; however, inmates are permitted to purchase stamps, medical items, and hygiene supplies.  *Id.*   Additionally, Defendant Jimenez says that inmates are permitted to file grievances while in administrative detention.  *Id.*  BOP records also indicate that Plaintiff filed grievances while he was housed in the SHU (Doc. No. 35-1, Exs. 2 & 3).

Plaintiff presents a document titled "Commissary History" to dispute Defendants' attestations (Doc. No. 52, Ex. 7).  This exhibit supports Defendant Jimenez's declaration. The exhibit provides that Plaintiff was not prevented from purchasing items in the commissary.  *Id.*  Instead, Plaintiff's commissary spending was limited to $25.00.  *Id.* Furthermore, although there is a section which states "STAMP RESTRICTION," the document also further provides "Permitted List."  *Id.*  The Court cannot conclude, based on this limited information, that the exhibit disputes Defendant Jimenez's statement that Plaintiff was not placed on a stamp restriction.  Therefore, Plaintiff has failed to establish a constitutional violation with regard to these claims.  *See O'Bryant*, 637 F.3d at 1217*; Smith*, 375 F. App'x at 910-11.

Additionally, to the extent Plaintiff contends Defendant Jimenez conspired with Defendant Hammond to file incident report 2168151, Plaintiff's claim fails.  To state a claim for conspiracy, a prisoner must allege more than "just vague and conclusory accusations." *Allen v. Sec'y, Fla. Dep't of Corr.*, 578 F. App'x 836, 840 (11th Cir. 2014) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984)).  A complaint must "contain enough factual matter . . . to suggest than [sic] an illegal agreement was made."  *Id.* (quotation omitted).  In this case, Plaintiff only broadly

15

alleges that a conspiracy existed between Defendants Jimenez and Hammond without providing any specific facts demonstrating an illegal agreement was made.  Moreover, as noted *supra*, Plaintiff has not provided any evidence to dispute Defendant Hammond's statements that Plaintiff possessed unauthorized items, which resulted in the disciplinary violation.  Therefore, Plaintiff has not demonstrated any constitutional violation on the part of Defendants Jimenez and Hammond.[9]

Accordingly, Defendants Jimenez and Hammond are entitled to qualified immunity, and summary judgment is granted in their favor.

### C.    Eighth Amendment Claims

Plaintiff claims that Defendant Jimenez violated his Eighth Amendment rights by placing him in administrative detention, which in turn deprived him of his use of personal property, hygiene items, and participation in the grievance process (Doc. No. 1 at 15-16).

The Eighth Amendment governs the treatment a prisoner receives in prison and the conditions under which he is confined.  *Helling v. McKinney*, 509 U.S. 25, 31 (1993). However, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Only the "'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citations omitted)).

Plaintiff has failed to demonstrate that a violation of his Eighth Amendment rights has occurred. First, the Court notes that both Ford and Defendant Jimenez state that once

---

[9]To the extent Plaintiff also argues that Defendants Pastrana and Watts conspired to retaliate against him, his claim fails for the same reasons discussed above.

an inmate receives a disciplinary violation, pursuant to BOP policy the rescoring of an inmate's security level is required (Doc. No. 35-1 at 6 & 7).   Furthermore, Defendant Jimenez attests that while he rescored Plaintiff, he did not have authority to place Plaintiff into administrative detention. Plaintiff has not provided any evidence disputing Defendant Jimenez's attestation.  Therefore, Plaintiff has not demonstrated that Defendant Jimenez violated his Eighth Amendment rights by placing him in administrative detention.

Additionally, Defendant Jimenez avers that Plaintiff had the ability to purchase personal and hygiene items while he was in administrative detention (Doc. No. 35-1 at 6). Moreover, BOP records indicate that Plaintiff could purchased up to $25.00 in commissary items and that he could file grievances while he was in administrative detention (Doc. No. 35-1, Exs. 2 & 3; Doc. No. 52, Ex. 7).  Again, Plaintiff has not provided any evidence to dispute these records.  Consequently, Plaintiff has not shown that his Eighth Amendment rights were violated.  The Court concludes that summary judgment in favor of Defendant Jimenez is warranted on this claim.

### D.   Supervisory Liability

Plaintiff alleges that Defendants Jarvis and Pastrana retaliated against him by denying his administrative appeals without conducting further investigations into Defendant Jimenez's misconduct (Doc. No. 1 at 12-13).   "It is well established in this circuit that supervisory officials are not liable under *Bivens* for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (quotation and alteration omitted); *Corbett v. Transp. Sec. Admin.*, 568 F. App'x 690, 697 (11th Cir. 2014).  The standard for which a supervisor is held liable is "extremely rigorous" — supervisors can be held liable when "'the supervisor

17

personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" *Gonzalez*, 325 F.3d at 1234 (quoting *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)); *Corbett*, 568 F. App'x at 697. A causal connection may be shown by evidence of 1) "a custom or policy that results in deliberate indifference to constitutional rights"; 2) "facts that support an inference that the supervisor [] directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so"; or 3) "a history of widespread abuse that notified the supervisor of the need to correct the alleged deprivation. . . ." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) (citing *West v. Tillman*, 496 F.3d 1321, 1328 (11th Cir. 2007)).

Plaintiff has failed to demonstrate how these Defendants personally participated in any constitutional violation. The mere fact that these Defendants, as supervisors, may have viewed or denied Plaintiff's grievances, without more, does not establish personal involvement or a causal connection. *See Asad v. Crosby*, 158 F. App'x 166, 170-72 (11th Cir. 2005) (affirming the district court's dismissal of supervisory liability claims against two defendants who denied the plaintiff's grievances because the plaintiff failed to show that the defendants personally participated in any alleged constitutional violation or that there was a causal connection between their actions and the alleged constitutional violation). Therefore, Defendants' motion for summary judgment is granted as to the claims against Defendants Jarvis and Pastrana.[10]

---

[10]If Defendants Holt and Watts were subject to the jurisdiction of this Court, summary judgment would also be granted in their favor on this basis.

18

**CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:.

1.      Defendants' Motion to Dismiss and Alternatively, Motion for Summary Judgment (Doc. No. 35) is **GRANTED**.

2.      The Clerk of Court is directed to enter a judgment in favor of Defendants, terminate all other pending motions, and close the case.

**DONE AND ORDERED** at Orlando, Florida, this 26th day of February, 2015.

UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-3 2/28
Counsel of Record
Gregory Bonaparte